**Nos. 21-13131, 21-13133, 21-13135**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

————————

3M COMPANY, *et al.*

*Defendants-Appellants,*

v.

LUKE ESTES, STEPHEN HACKER, LEWIS KEEFER,

*Plaintiffs-Appellees.*

————————

On Appeal from the United States District Court
for the Northern District of Florida
Nos. 3:19-md-2885, 7:20-cv-137, 7:20-cv-131, 7:20-cv-104

————————

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

————————

GEORGE W. HICKS, JR.
KASDIN M. MITCHELL
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000

PAUL D. CLEMENT
  *Counsel of Record*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

COLE CARTER
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

*Counsel for Defendants-Appellants*

October 20, 2022

*3M Company, et al. v. Estes, et al.*, Nos. 21-13131, 21-13133, 21-13135

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Defendants-Appellants 3M Company, 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC hereby certifies that the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case on appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- 3M Company (**MMM**) – Defendant-Appellant

- 3M Occupational Safety LLC – wholly owned subsidiary of Defendant-Appellant 3M Company

- Aearo Holdings LLC – wholly owned subsidiary of Defendant-Appellant 3M Company

- Aearo Intermediate LLC – wholly owned subsidiary of Defendant-Appellant 3M Company

- Aearo Technologies LLC – wholly owned subsidiary of Defendant-Appellant 3M Company

- Aearo, LLC – wholly owned subsidiary of Defendant-Appellant 3M

*3M Company, et al. v. Estes, et al.*, Nos. 21-13131, 21-13133, 21-13135

Company

- Aylstock Witkin Kreis & Overholtz – counsel for Plaintiff-Appellee

- Aylstock, Bryan Frederick – counsel for Plaintiff-Appellee

- Barr, Brian H. – counsel for MDL Plaintiffs

- Beall, Charles Franklin, Jr. – counsel for Defendants-Appellants

- Benton, Diana Clough – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Bhimani, Jay L. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Bouk, Winston Troy – counsel for MDL Plaintiffs

- Bradley Arant Boult Cummings – counsel for Defendant-Appellant 3M Company

- Branscome, Kimberly O. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Brock, Robert C. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

*3M Company, et al. v. Estes, et al.*, Nos. 21-13131, 21-13133, 21-13135

- Brown & James – counsel for Plaintiff-Appellee

- Brown, Micah David – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Buchanan, David R. – counsel for Plaintiff-Appellee

- Burns, Michael A. – counsel for MDL Plaintiffs

- Buxner, Evan D. – counsel for MDL Plaintiffs

- Cantero, Raoul G. – counsel for Defendant-Appellant 3M Company

- Carter, Cole T. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Cartmell, Thomas P. – counsel for MDL Plaintiffs

- Castiglia, Craig – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Ciresi Conlin LLP – counsel for Plaintiff-Appellee

- Clark Love & Hutson – counsel for Plaintiff-Appellee

- Clement, Paul D. – counsel for Defendants-Appellants

- Clement & Murphy, PLLC – counsel for Defendants-Appellants

- Cooper, David M. – counsel for Plaintiff-Appellee

*3M Company, et al. v. Estes, et al.*, Nos. 21-13131, 21-13133, 21-13135

- Cornell, Katherine Lindsey – counsel for MDL Plaintiffs

- Czak, Steven C. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- DeCamp, Kyle Richard – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Dechert LLP – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- De Paulo, Tabitha J. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Elizabeth, Sierra – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Ellis, Robert P. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Esfandiarifard, Saghar – counsel for Defendants-Appellants 3M

*3M Company, et al. v. Estes, et al.*, Nos. 21-13131, 21-13133, 21-13135

> Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Estes, Luke – Plaintiff-Appellee

- Estes, Jennifer – Plaintiff-Appellee

- Fields, Barry E. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Fox, Shawn – counsel for Plaintiff-Appellee

- Glass, David M. – counsel for the United States of America

- Gori Julian & Associates – counsel for MDL Plaintiffs

- Gottlieb, Simon – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Gunderson, Karl B. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Hacker, Stephen – Plaintiff-Appellee

- Hicks, George – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

*3M Company, et al. v. Estes, et al.*, Nos. 21-13131, 21-13133, 21-13135

- Hill, Thomas Larry – counsel for Defendants-Appellants

- Hodge, Leigh Anne – counsel for Defendant-Appellant 3M Company

- Hoekstra, Jennifer M. – counsel for MDL Plaintiffs

- Hutson, Shelley Van Natter – counsel for Plaintiff-Appellee

- Jones, Hon. Gary R. – U.S. Magistrate Judge for the Northern District of Florida

- Karis, Hariklia – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Keefer, Lewis – Plaintiff-Appellee

- Kelly, Maxwell H. – counsel for Plaintiff-Appellee

- Kim, Mary H. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Kirkland & Ellis LLP – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Kolsky, Joshua M. – counsel for the United States of America

- Kreis, Douglass A. – counsel for Plaintiff-Appellee

- Laminack Pirtle & Martines – counsel for MDL Plaintiffs

*3M Company, et al. v. Estes, et al.*, Nos. 21-13131, 21-13133, 21-13135

- Lauria, Jessica C. – counsel for Defendant-Appellant 3M Company

- Leach, Garret A. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Leuthauser, Nolan M. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Levin Papantonio Rafferty – counsel for MDL Plaintiffs

- Marlowe, Emily B. – counsel for Plaintiff-Appellee

- Mitchell, Kasdin – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Morriss, F. Chadwick – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Mostyn Law – counsel for MDL Plaintiffs

- Moore Hill & Westmoreland – counsel for Defendants-Appellants

- Murphy, Erin E. – counsel for Defendants-Appellants

- Neglia, Ashley E. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo

*3M Company, et al. v. Estes, et al.*, Nos. 21-13131, 21-13133, 21-13135

Technologies LLC, and Aearo, LLC

- Nomellini, Mark J. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Odom, Megan L. – counsel for Plaintiff-Appellee

- Onder Law LLC – counsel for MDL Plaintiffs

- Ozurovich, Allison K. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Pirtle, Thomas W. – counsel for MDL Plaintiffs

- Pulaski Law Firm – counsel for MDL Plaintiffs

- Quinn Emanuel Urquhart & Sullivan LLP – counsel for Plaintiff-Appellee

- Rafferty, Troy Alan – counsel for MDL Plaintiffs

- Rivera, Maria P. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Rodgers, Hon. M. Casey – U.S. District Judge for the Northern District of Florida

- Sacchet, Michael A. – counsel for Plaintiff-Appellee

*3M Company, et al. v. Estes, et al.*, Nos. 21-13131, 21-13133, 21-13135

- Seeger, Christopher A. – counsel for MDL Plaintiffs

- Seeger Weiss LLP – counsel for Plaintiff-Appellee

- Seeley, Caleb A. – counsel for Plaintiff-Appellee

- Tam, Jonathan S.  – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- Tracey Fox King & Walters – counsel for Plaintiff-Appellee

- Tracey, Sean Patrick – counsel for Plaintiff-Appellee

- Van Fleteren, Haley J. – counsel for Defendants-Appellants

- Wagstaff & Cartmell – counsel for MDL Plaintiffs

- Wasdin, Nicholas F. – counsel for Defendants-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC

- White & Case – counsel for Defendant-Appellant 3M Company

- Wilson, Quinn Robert – counsel for MDL Plaintiffs

Defendant-Appellant 3M Company states that it is a corporation whose shares are publicly traded (NYSE: **MMM**).   3M Company does not have a parent corporation and no publicly held corporation owns 10% or more of 3M's stock.

*3M Company, et al. v. Estes, et al.*, Nos. 21-13131, 21-13133, 21-13135

Defendant-Appellants 3M Occupational Safety LLC, Aearo Holdings LLC, Aearo Intermediate LLC, Aearo Technologies LLC, and Aearo, LLC state that they are wholly owned subsidiaries of Defendant-Appellant 3M Company.

October 20, 2022

<u>s/Paul D. Clement</u>
Paul D. Clement

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT...........................................................1

TABLE OF AUTHORITIES................................................................ iii

INTRODUCTION ................................................................................1

ARGUMENT ........................................................................................3

I.    The Government-Contractor Defense Preempts Plaintiffs' Claims. ..............3

    A.    The District Court Erred In Finding The Absence Of A "Uniquely Federal Interest." ................................................3

    B.    The District Court Erred In Finding the Government Had Not Approved Reasonably Precise Specifications for the CAEv2. ...........6

    C.    Appellants Satisfied The Remaining Two *Boyle* Prongs. ...................9

    D.    The Government-Contractor Defense Preempts Plaintiffs' Failure-to-Warn Claims. ........................................................11

    E.    The Government-Contractor Defense Applies to Plaintiffs' Other Claims. ..............................................................13

II.    The CAEv2 Is Exempt From The Noise Control Act. ...................................18

    A.    This Court Has Jurisdiction to Interpret the Noise Control Act. ........................................................................18

    B.    The Combat-Use Exemption Applies to Noise-Reducing Equipment Like the CAEv2. .............................................19

    C.    The Court's Legal Error Was Not Harmless. ....................................20

III.    Numerous Evidentiary Issues Require a New Trial. ....................................22

    A.    The Vietas Letter and *Qui Tam* Report Are Inadmissible. ................22

    B.    Evidence About Alleged Manufacturing Issues in Mexico Is Inadmissible. ........................................................................25

i

C.    The District Court's Instruction Regarding Other Lawsuits Was Improper........................................................................... 26

CONCLUSION .................................................................................... 28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES[*]

**Cases**

*Beckwith v. City of Daytona Beach Shores*,
    58 F.3d 1554 (11th Cir. 1995) ................................................................10

*\*Boyle v. United Techs. Corp.*,
    487 U.S. 500 (1988) ........................................................................4, 6

*\*Brinson v. Raytheon Co.*,
    571 F.3d 1348 (11th Cir. 2009) .........................................................4, 6

*Carley v. Wheeled Coach*,
    991 F.2d 1117 (3d Cir. 1993) ...............................................................5

*Dorse v. Eagle-Picher Industries*,
    898 F.2d 1487 (11th Cir. 1990) ..........................................................11

*Dowd v. Textron, Inc.*,
    792 F.2d 409 (4th Cir. 1986) ................................................................9

*Encino Motorcars, LLC v. Navarro*,
    138 S.Ct. 1134 (2018) ........................................................................20

*FCC v. AT&T Inc.*,
    562 U.S. 397 (2011) ............................................................................20

*Graves v. 3M Co.*,
    17 F.4th 764 (8th Cir. 2021) ...............................................................11

*Gray v. Lockheed Aeronautical Sys. Co.*,
    125 F.3d 1371 (11th Cir. 1997) .........................................................8, 9

*In re Agent Orange Prod. Liab. Litig.*,
    304 F.Supp.2d 404 (E.D.N.Y. 2004) ..................................................14

*In re Agent Orange Prod. Liab. Litig.*,
    517 F.3d 76 (2d Cir. 2008) ............................................................ 4, 10

[*] Citations upon which Appellants primarily rely are marked with asterisks.

iii

*In re Hawaii Fed. Asbestos Cases*,
    960 F.2d 806 (9th Cir. 1992) ................................................................... 5

*Lewis v. Babcock Indus.*,
    985 F.2d 83 (2d Cir. 1993) ...................................................................... 9

*McKay v. Rockwell Int'l Corp.*,
    704 F.2d 444 (9th Cir. 1983) ................................................................... 9

*Richards v. Michelin Tire Corp.*,
    21 F.3d 1048 (11th Cir. 1994) ............................................................... 15

*Ripley v. Foster Wheeler LLC*,
    841 F.3d 207 (4th Cir. 2016) ................................................................. 13

*Royal Typewriter Co. v. Xenographic Supplies Corp.*,
    719 F.2d 1092 (11th Cir. 1983) ............................................................. 15

*United States v. Rea*,
    958 F.2d 1206 (2d Cir. 1992) ................................................................ 27

*United Tech. Corp. v. Mazer*,
    556 F.3d 1260 (11th Cir. 2009) ............................................................. 24

**Statutes**

42 U.S.C. §4902 ....................................................................................... 18

42 U.S.C. §4915 ....................................................................................... 19

**Regulation**

40 C.F.R. §211.102 ................................................................................... 19

**Rules**

Fed. R. Evid. 103 ..................................................................................... 21

Fed. R. Evid. 803 ..................................................................................... 24

## INTRODUCTION

Plaintiffs struggle mightily to dissuade this Court from reaching the merits of this appeal, but their suggestions of waiver and jurisdictional obstacles cannot distract from the fundamental errors that permeated the proceedings below.  Since Appellants filed their opening brief, this sprawling multi-district litigation has only grown, and with it, the need for this Court's intervention.  Five more skewed "bellwether" trials tainted by the systematic errors here (and others) have occurred, resulting in more than $136 million in damages awarded based on flawed legal rulings and improper and misleading evidentiary records.  The district court is now pushing forward thousands of "wave" cases to be ready for trials on the same flawed legal and evidentiary record.  Unless and until this Court intervenes, the district court's erroneous rulings at issue here will continue to distort the MDL and skew the valuation of remaining claims, as the cases proceed with Appellants unable even to mention critical aspects of the military's role in designing the products at issue or to explain that directions for use (which the military directed Appellants not to provide) were not required by the Noise Control Act.  The district court's deeply flawed judgment here should be reversed.

The government-contractor defense should have ended this litigation at the threshold.  There is no dispute that the military recruited Appellants to develop a dual-ended earplug, reviewed samples, asked that they be shortened, approved the

final design and product for military use, directed Appellants not to provide any written information with the earplugs, and later developed its own instructions to distribute to soldiers.  The government-contractor defense forbids plaintiffs from using state tort law to impose liability on Appellants for those military decisions.  Yet despite these undisputed facts, the district court not only denied summary judgment for Appellants on that defense, but *granted* summary judgment for plaintiffs.  Even worse, based on that ruling, the district court excluded evidence of the government's key role in designing the product, thus creating a misleading trial record that prevented Appellants from presenting the whole truth at trial.  Plaintiffs respond with a spurious waiver argument that misrepresents Appellants' briefing below and ignores that preempted design-defect and failure-to-warn theories underlie, and are fatal to, all of plaintiffs' claims.  On the merits, plaintiffs rely on inapposite case law and a slanted view of the evidence that cannot support the court's grant of summary judgment *in plaintiffs' favor* on the government-contractor defense.  At the very least, if this Court does not end the litigation, it should reverse the grant of summary judgment for plaintiffs and remand for a new trial on the basis of a full and accurate record.

Things go from bad to worse for plaintiffs when it comes to defending the district court's misreading of the NCA and ruling that Appellants were barred even from denying that they acted unlawfully in failing to properly label military

equipment.  Plaintiffs press a frivolous jurisdictional argument, a belated plea for *Chevron* deference, and harmlessness.  None of these misguided arguments justifies the district court's misreading of the NCA or alters the reality that the court's erroneous ruling allowed plaintiffs and the district court to repeatedly label Appellants as lawbreakers, a scurrilous accusation that was harmful in the extreme and tainted the entire trial.

Finally, rather than offer substantive defenses of the district court's repeated decisions to admit inadmissible and prejudicial evidence on which plaintiffs built their case, plaintiffs principally raise forfeiture and harmlessness arguments.  But Appellants preserved their objections, each of the evidentiary errors supports a new trial, and their combined effect compels one—as the improperly admitted evidence was central to plaintiffs' case, just as the legal errors deprived Appellants of a meaningful defense.  The result has been a series of fundamentally skewed judgments that are useless as representative bellwether outcomes in this largest MDL in history.

## ARGUMENT

### I.  The Government-Contractor Defense Preempts Plaintiffs' Claims.

#### A.  The District Court Erred In Finding The Absence Of A "Uniquely Federal Interest."

The Supreme Court and this Court have held, without qualification, that "the procurement of equipment by the United States is an area of uniquely federal

interest." *Brinson v. Raytheon Co.*, 571 F.3d 1348, 1351 (11th Cir. 2009) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988)). Undeterred, the district court ruled as a threshold matter that the government's "uniquely federal interest" in procuring equipment extends *only* to a "procurement contract containing a design component"; a mere "purchase order" is insufficient. Dkt.1280 at 31-32. Plaintiffs attempt to reconcile the district court's cramped view with *Boyle* by asserting that *Boyle* requires the government's "uniquely federal interest" to be "root[ed] … in contract performance." Resp.Br.26. But *Boyle* did "not hold that a conflicting, express contractual duty was required." *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 96 (2d Cir. 2008). *Boyle* was not concerned "narrowly about duties imposed by contract," but "more broadly about federal policies and interests and the exercise of federal discretion." *Id*. That understanding makes good sense: What matters is whether the government approved the design, not whether the design was embodied in the contract.

But in all events, the design here was embodied in the "procurement contract" in the sense *Boyle* used the term. Opening.Br.32. Under the purchase orders the military placed for CAEv2 products, Appellants had a contractual duty to provide exactly the product the military ordered, with the design the military had previously reviewed and approved. If Appellants had provided earplugs that departed from the approved design (*e.g.*, were as lengthy as the initial rejected prototype), the military

4

would have rightly rejected them.  Because state tort law (in plaintiffs' view) would have required Appellants to provide the military a different product than the one requested and supplied under the purchase orders, and thus would interfere with uniquely federal interests, the government-contractor defense provides a complete defense to such tort-law claims.

Plaintiffs advance a contrary argument that even the district court did not embrace—that the military had no uniquely federal interest in the design of the CAEv2 simply because the earplug was also sold commercially.  Resp.Br.28. Plaintiffs rely on a case from the Ninth Circuit concerning asbestos insulation, in which the court held that, "[w]here the goods ordered by the military are those readily available, in substantially similar form, to commercial users, the military contractor defense does not apply."  *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 811 (9th Cir. 1992).  But that reasoning as to commercial products that the government chooses to order does not apply to the CAEv2.  *Boyle* would not have been decided differently if some helicopters had been sold commercially after the military approved the design for a military helicopter.  And the theory is wrong in any event, as numerous courts have recognized.  *See, e.g.*, *Carley v. Wheeled Coach*, 991 F.2d 1117, 1124 (3d Cir. 1993).  The military has a uniquely federal interest in procuring the equipment it needs even if the equipment is also available to civilians.

**B.  The District Court Erred In Finding the Government Had Not Approved Reasonably Precise Specifications for the CAEv2.**

Plaintiffs have little to say in defense of the district court's erroneous alternative holding concerning the first step of the *Boyle* analysis—that the government did not "approve[] reasonably precise specifications." *Boyle*, 487 U.S. at 512.  That factor "ensure[s] that 'the design feature in question was *considered* by a Government officer.'" *Brinson*, 571 F.3d at 1355 (quoting *Boyle*, 487 U.S. at 512) (emphasis in *Brinson*).  It is undisputed that the military "considered" the design of the CAEv2 before deciding to procure it with an altered design.  As plaintiffs never contest, the Army's Dr. Ohlin convened a meeting to discuss the potential designs for a non-linear earplug and told Aearo he was "interested in [a] 2-ended plug." Ex.2 at 2.  Aearo then sent Ohlin dual-ended samples; Ohlin reviewed them and told Aearo that they were too long because they would not fit in the standard-issue carrying case, they left parts of the earplug exposed, and—in what was termed a "show stopper"—they would not fit under the Army's standard-issue helmet.  Ex.5 at 2. Aearo sent Ohlin shortened samples, which he determined were "acceptable," Ex.3 at 4, and Ohlin then submitted a formal recommendation "that a non-linear earplug *configured to the specifications of the enclosed production samples* be adopted for military use."  Ex.9 at 1 (emphasis added); *see also* D-Gen-272 (Ohlin informing Aearo that "you can say the combat arms earplug has been 'evaluated and specified by the U.S. Armed Forces'").  Ohlin thus obviously "considered" the "design feature

6

in question" here—specifically, the "specifications" of the earplug's length.[1]  At the very least, when construed in the light most favorable to Appellants, this evidence raises a genuine factual issue on that question, precluding summary judgment for *plaintiffs* on the government-contractor defense.

Plaintiffs' response is to misstate the facts and the law.  Plaintiffs claim that Aearo sent the samples "unprompted," but that is demonstrably false.  Resp.Br.5.  The letter Aearo sent to Ohlin explained that it enclosed "the non-linear earplugs *you requested* from Brian Myers."  Ex.12 (emphasis added).  Plaintiffs also suggest that Aearo's offer to shorten the CAEv2 was merely an unsolicited attempt to "close the sale," Resp.Br.5, but Ohlin's contemporaneous emails make clear that the Army *required* that design change for multiple reasons.  *See* Ex.5 at 2 (Ohlin stating "[t]here are at least three reasons why they [Aearo] are going to have to shorte[n] the production samples," and it "is a show stopper if we can't get the modification").  Furthermore, the email from Aearo's Bryan Myers to Ohlin stated, "we can probably shorten the plug by the 1/4 [inch] required to fit your container," which clearly indicates that Ohlin had informed Myers of the issue.  Ex.4 at 2.  Regardless, even

---

[1] To the extent plaintiffs suggest other design features were at issue, *see* Resp.Br.33, the same reasoning compels the same conclusion.

unprompted or unsolicited samples would not change the fact that Ohlin "considered"—indeed, reviewed and approved—the final design and product.[2]

On the law, plaintiffs make no effort to defend the district court's reasoning (based on inapposite and abrogated authority) that Ohlin's review of the CAEv2 was inadequate because he did not receive "'detailed, precise [or] quantitative' information," such as design drawings or written descriptions. Dkt.1280 at 39-40. Instead, plaintiffs argue that this Court's decision in *Gray v. Lockheed Aeronautical System Co.*, 125 F.3d 1371 (11th Cir. 1997), *vacated on other grounds*, 524 U.S. 924 (1998), established that the government cannot approve specifications for a product by reviewing the product itself. *See* Resp.Br.34.

*Gray* held no such thing. In that case, the manufacturer of an airplane provided the military with a "general narrative description" of the allegedly defective component (the "servo," which was part of the "flight control system"). *Gray*, 125 F.3d at 1374, 1378. This Court found that general description inadequate

---

[2] Plaintiffs devote a significant portion of their brief to contending that a 2006 "Medical Procurement Item Description" (MPID) and two of Ohlin's emails do not constitute "reasonably precise specifications" for the CAEv2. *See* Resp.Br.31-33. But Appellants never argued that the MPID constitutes reasonably precise specifications. And the two Ohlin emails invoked by plaintiffs are a red herring given that Ohlin not only *reviewed and approved* the sample earplugs themselves after they were shortened at his request, but also subsequently recommended to the military "that a non-linear earplug *configured to the specifications of the enclosed production samples* be adopted for military use." Ex.3 at 4 (emphasis added). Plaintiffs wholly ignore these (and other) communications.

under *Boyle*. *Id*. at 1378. The defendant did *not even* argue, as plaintiffs claim, that the Navy's acceptance of the entire airplane after it "passed all of the Navy's acceptance tests" constituted approval of reasonably precise specifications for the "servo" component. *Id*. at 1374.

The instructive precedent for this Court, then, is not *Gray* but *Brinson* and decisions from other circuits, including *Lewis v. Babcock Industries*, 985 F.2d 83, 85 (2d Cir. 1993), and *Dowd v. Textron, Inc.*, 792 F.2d 409 (4th Cir. 1986), with which the district court's analysis cannot be reconciled. Plaintiffs attempt to distinguish those cases on the basis that they involved "post-production approval," Resp.Br.35, but the distinction makes no difference and, if anything, pre-production evaluation suggests greater involvement in product design. Either way, "to hold military suppliers liable for defective designs where the United States set or approved the design specifications would thrust the judiciary into the making of military decisions." *McKay v. Rockwell Int'l Corp.*, 704 F.2d 444, 449 (9th Cir. 1983). The district court's categorical rejection of Appellants' government-contractor defense on prong one of *Boyle*, at the summary judgment stage no less, cannot stand.

## C. Appellants Satisfied The Remaining Two *Boyle* Prongs.

As Appellants explained in their opening brief, they are entitled to summary judgment on the second and third prongs, and thus this Court can and should enter summary judgment for Appellants. *See* Opening.Br.37-40. There is no dispute that

the CAEv2 "conformed" to the specifications approved by Ohlin (prong two) and no genuine dispute that Appellants gave the military design information that was "substantial enough to influence [the military's] decision." *In re Agent Orange*, 517 F.3d at 99; *see also Baker*.Reply.14-17. Despite Appellants' squarely raising and briefing prongs two and three in their opening brief, plaintiffs refuse to engage and simply request a remand, so that a court that has already erred on the *Boyle*'s threshold question and prong one can pass on prongs two and three. Resp.Br.39.

That failure to respond should not be countenanced. While reaching prongs two and three is discretionary *for this Court*, plaintiffs cannot force this Court's hand by refusing to engage when the issue is properly before this Court and briefed by Appellants. Simply put, the consequence of plaintiffs' failure to respond is not that they get to grant themselves the wished-for remand, but forfeiture. *See Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1564 n.16 (11th Cir. 1995) ("Appellees' failure to brief this issue abandons it for the purposes of this appeal."). Moreover, reaching and resolving prongs two and three makes particular sense here. The MDL bellwether process is too far along for do-overs; the parties and the MDL court need clarity. And the facts clearly establish that the central design defect alleged by plaintiffs originated with the military, and that this case thus lies within the heartland of the government-contractor defense.

10

### D.  The Government-Contractor Defense Preempts Plaintiffs' Failure-to-Warn Claims.

The courts of appeals agree that *Boyle*'s government-contractor defense applies to failure-to-warn claims in only "slightly modified" form.  *Graves v. 3M Co.*, 17 F.4th 764, 772 (8th Cir. 2021) (collecting cases).  Plaintiffs nevertheless suggest this Court has adopted a very different approach.  Like the district court, plaintiffs argue that the single-sentence, *per curiam* affirmance in *Dorse v. Eagle-Picher Industries*, 898 F.2d 1487 (11th Cir. 1990), created a lopsided circuit split wherein this Court stands alone by requiring defendants to show that the government *affirmatively prohibited* a particular warning, not just that the government considered and approved the warning or lack thereof.  Resp.Br.37-39.

Plaintiffs are wrong.  *Dorse* certainly did not create a categorical rule demanding a government prohibition against warnings in every failure-to-warn case.  In *Dorse*, there was no evidence of what the Navy wanted from the asbestos supplier other than the applicable contract, so the fact that the contract lacked a prohibition on warnings was dispositive.  *Dorse* did not address a situation like this one, where Aearo and the military repeatedly discussed what information should accompany the CAEv2, and the military communicated its decisions in phone calls and emails.

The undisputed evidence shows that the military made a discretionary judgment not to obtain direct supplier-to-soldier instructions from Appellants.  Thus, even if a prohibition were required, Ohlin supplied one when he directed Aearo "not

11

to include instructions in th[e] box" in which bulk packages of the CAEv2 were shipped because "[h]e felt that personal training was the most effective way to train the soldiers." Ex.62 at 326:22-327:3.[3]

In the face of uncontroverted evidence that the military specifically instructed Appellants not to provide instructions, plaintiffs repeatedly invoke a 2006 "Medical Procurement Item Description" (MPID). But the MPID applies only to substitute products and *not* the CAEv2, as *plaintiffs themselves* argued in the district court. Dkt.1072 at 20. Moreover, any implications lurking in the MPID do not alter the reality that Appellants were repeatedly told that instructing soldiers on proper use in combat was the military's job. *See* Ex.62 at 326:22-327:10; Ex.38; Ex.39.

Plaintiffs also argue that, even if the military determined it did not need *instructions* from Appellants, it said nothing to preclude Appellants from providing written *warnings* with the CAEv2. This formalistic distinction between instructions and warnings gets plaintiffs nowhere. Ohlin told Appellants to ship "50 pair in a plastic bag, *with nothing else in there*, inside a box." Ex.62 at 326:15-18 (emphasis added). He wanted no information from Appellants, whether in the form of warnings or instructions, because the military intended to train soldiers to use the CAEv2 on its own. That choice was the military's alone to make. *See Ripley v. Foster Wheeler*

---

[3] Plaintiffs contend that this testimony is hearsay, *see* Resp.Br.38, but even the district court disagreed, *see Keefer*.Dkt.132-1 at 378.

*LLC*, 841 F.3d 207, 211 (4th Cir. 2016) ("[T]he constitutional separation of the judiciary from military matters carries no less force with respect to the design of military equipment than it does with respect to the warnings accompanying such equipment."). Plaintiffs cannot fault Appellants for deferring to the military's decision to give soldiers the information they needed to use the CAEv2 directly, without any manufacturer involvement.

### E. The Government-Contractor Defense Applies to Plaintiffs' Other Claims.

Plaintiffs claim that Appellants waived the application of the government-contractor defense to plaintiffs' ancillary claims for negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, breach of implied and express warranties, and negligence *per se*. Plaintiffs base their waiver argument on a single sentence from Appellants' opposition to plaintiffs' motion for summary judgment: "Plaintiffs correctly note that the contractor defense applies only to design-defect and failure-to-warn claims." Dkt.1088 at 39.

To call this quotation selective would be an enormous understatement. The sentence appeared under the heading: "**The Government Contractor Defense Preempts Plaintiffs' Other Claims.**" Dkt.1088 at 39. After noting that the government-contractor defense applies to design-defect and failure-to-warn claims, Appellants explained that, "if defendants are successful on the contractor defense, plaintiffs will be preempted from asserting that the CAEv2 is defective, and from

13

challenging the absence of a warning. *In that event, plaintiffs will be unable to satisfy necessary elements of their other claims, all of which 'boil down' to one or both of those assertions*." *Id.* (emphasis added). Far from a "conce[ssion]" that the defense did not apply to any other claims, Appellants were explaining that a finding that the defense applied in the design-defect or failure-to-warn contexts would *a fortiori* defeat every other claim.

Appellants reiterated that argument in their opening brief, asking for summary judgment (or, at the least, reversal of the grant of summary judgment for plaintiffs) *on all claims*, insofar as they rested on allegations of design defect and failure to warn. *See* Opening.Br.44; *see In re Agent Orange Prod. Liab. Litig.*, 304 F.Supp.2d 404, 408, 436, 442 (E.D.N.Y. 2004) ("dismiss[ing]" cases in their entirety, including "fraud" and "misrepresentation" claims, after analyzing "claims based on failure to warn" and on "design defects"). At every stage, Appellants have maintained their position that the government-contractor defense bars *all* claims based on allegations that the CAEv2 is too short without the flanges folded back or that Appellants failed to provide adequate warnings—regardless of how those allegations are packaged.

Plaintiffs next suggest that allegations having nothing to do with design-defect or failure-to-warn claims could have supported the jury's misrepresentation, concealment, warranty, and negligence *per se* verdicts. Resp.Br.23-25. Tellingly, the only alternative theory plaintiffs identify—that plaintiff Hacker relied on the

14

NRR of 22 on the CAEv2's packaging, Resp.Br.23-25—applies to only one plaintiff and is meritless.[4]  But even if plaintiffs had viable alternative theories unconnected to their basic design-defect or failure-to-warn theories, Appellants would nevertheless be entitled to a new trial on those other counts.  Where "two or more claims are submitted to [the] jury in [a] single interrogatory, a new trial may be required if *either* of the claims was erroneously submitted, as there is no way to be sure that the jury's verdict was not predicated solely on the invalid claim."  *Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1055 (11th Cir. 1994) (emphasis added); *see id*. at 1054 (approvingly citing case for "reversing and remanding general verdict for a new trial because one of six different misrepresentations making up plaintiffs' fraud claim was improperly submitted to the jury"); *Royal Typewriter Co. v. Xenographic Supplies Corp.*, 719 F.2d 1092, 1099 (11th Cir. 1983).

Here, the jury's verdict on the concealment, misrepresentation, warranty, and negligence *per se* claims plainly could have rested (and almost certainly did rest) on the design-defect and failure-to-warn theories upon which the three-week trial focused.  For example, the jury readily could have concluded that, because of the alleged design defects supposedly identified in the Flange Report, Vietas letter, and

---

[4] Hacker did not testify that he relied on the NRR when he chose to use the CAEv2 (which is why Plaintiffs provide no citation for that assertion). *See* Resp.Br.23. On the contrary, Hacker agreed that he "didn't even know what the noise-reduction rating meant." 4/14/21 Tr. 159:21-23.

*qui tam* report, Appellants' representations regarding the efficacy of the CAEv2 were fraudulent, and that the earplug did not comply with express and implied warranties of fitness. Indeed, the jury certainly rested its negligence *per se* verdict on Appellants' failure to provide instructions supposedly required by federal regulations, even though the military's decision to dispense with supplier-to-soldier instructions should have preempted that theory. Because it is certainly possible that the jury's verdict on the other counts rested on the underlying allegations of design-defect and failure-to-warn that the government-contractor defense bars as a basis for imposing liability on the Appellants, vacatur of the jury's verdict on those counts is required.

Worse still, plaintiffs ignore that the district court's ruling did not just permit plaintiffs to present evidence that the government-contractor defense should have foreclosed; it also prejudiced Appellants by limiting the evidence they could present in their defense. The district court sustained plaintiffs' objections to the admission of key evidence inconsistent with the court's summary judgment ruling, *see* Dkt. 1663 at 6-17, and prevented Appellants from playing deposition testimony from several witnesses about the military's evaluation and approval of the CAEv2, including (a) testimony by Aearo's Elliott Berger that "this is the design that we provided to and worked with the US military on, the one that they asked … us to work with," *Keefer*.Dkt.126-1 at 222; (b) testimony by former DoD Hearing

16

Conservation Group Chair Kathy Gates that Ohlin "was involved with … the creation of the Combat Arms Earplug"; and (c) testimony from Gates that she "recall[ed] discussions about trying to shorten [the earplug] so that it would fit better in—under the Kevlar and in the earplug case," *Keefer*.Dkt.122-1 at 5, 22.

The district court excluded this and other evidence of the military's role in the development of the CAEv2. Indeed, the district court ordered before trial that "in the courtroom … you not use the word 'specifications,'" 3/15/21 Tr. at 78-79, but granted plaintiffs an exception so they could tell the jury it "w[ould] not see any evidence that there were military specifications," 3/17/21 Tr. at 151:7-8. The district court also ordered Appellants to not speak of the military's "role in *or* responsibility for how you all came up with that plug." 3/17/21 Tr. at 149:8-17 (emphasis added). In subsequent bellwether trials, the district court even admonished Appellants that the mere "idea that the military collaborated in the development and design of the plug is too close to violating my summary judgment order." 9/20/21 *Adkins* Tr. at 16:13-15; *see also* Opening.Br.56 (noting other excluded and redacted documents regarding government's role). But there is a vast difference between (i) granting plaintiffs summary judgment on the government-contractor defense; and (ii) preventing the jury from hearing about the "idea that the military collaborated in the development and design of the plug." Appellants are aware of no case that allows a district court to exclude evidence plainly relevant to the *remaining claims* at trial on

the ground that the court granted summary judgment on a *separate defense*. But because of the district court's rulings, the jury was given a distorted and counterfactual narrative obscuring the military's robust role in the development of the CAEv2. At a minimum, the verdict based on that false narrative should be vacated, and Appellants should be given the opportunity to present the complete story to a new jury.

## II. The CAEv2 Is Exempt From The Noise Control Act.

### A. This Court Has Jurisdiction to Interpret the Noise Control Act.

The district court clearly erred and badly prejudiced Appellants by instructing the jury that the CAEv2 was subject to EPA regulations requiring instructions and an NRR label (which Appellants indisputably did not provide), despite the express statutory exemption for "any military weapons or equipment which are designed for combat use." 42 U.S.C. §4902(3)(B). Plaintiffs attempt to shield this erroneous ruling from review by contending that this Court lacks jurisdiction to apply the statutory combat-use exemption to the CAEv2. Resp.Br.41-42. This argument is meritless.

First, plaintiffs' jurisdictional argument rests on the false premise that EPA decided the combat-use exemption should not apply to noise-reducing equipment and that Appellants are now belatedly trying to challenge that agency decision. But EPA has never made such a determination; in fact, EPA's regulations say nothing

about the scope of the statutory exemption.  *See* 40 C.F.R. §211.102(h).  Because the regulations simply fail to address the statutory exemption, the federal courts are free to address its scope, unencumbered by claims for *Chevron* deference or frivolous arguments that a regulatory challenge belongs in the D.C. Circuit.[5]

Second, even if Appellants were challenging EPA's regulations, the jurisdictional bar invoked by plaintiffs—purportedly requiring any challenge to the scope of the regulations to have been brought in the D.C. Circuit "within ninety days from the date of … promulgation," 42 U.S.C. §4915(a)—applies only in government enforcement actions and only where a timely pre-enforcement challenge could have been brought.  Here, the CAEv2 was still 20 years away when the regulations were issued in 1979.

## B. The Combat-Use Exemption Applies to Noise-Reducing Equipment Like the CAEv2.

On the merits, plaintiffs do not meaningfully defend the district court's application of the *noscitur a sociis* canon, which the court believed required it to interpret "equipment" in light of the word "weapon."  Instead, plaintiffs seek refuge in another doctrine—that "identical words and phrases within the same statute should normally be given the same meaning," *FCC v. AT&T Inc.*, 562 U.S. 397, 408

---

[5] Further belying plaintiffs' argument, the labeling regulations for noise-*emitting* products also do not mention the combat-use exemption, yet plaintiffs concede the exemption's application to such equipment.

(2011). *See* Resp.Br.43-46. That argument fares no better than the reasoning they abandon. The references to "equipment" in other exemptions are equally applicable to noise-reducing equipment, and the references to various forms of noise-producing equipment just reinforce that the statute presumptively applies to noise-reducing and noise-emitting products. The exception's reference to equipment is equally two-sided and applies to noise-reducing and noise-emitting equipment. *See Baker*.Reply.Br.19-21.

In the end, plaintiffs have no real defense to the district court's anomalous decision to render one-dimensional an exemption to two-dimensional requirements that apply equally to noise-emitting and noise-reducing products. The Supreme Court has admonished courts to read exemptions "fair[ly]," *Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 1142 (2018), and the only fair reading of an exemption for "weapons or equipment used in combat" extends to noise-reducing equipment in general, and the CAEv2 in particular.

## C. The Court's Legal Error Was Not Harmless.

Because the district court instructed the jury that federal regulations required Appellants to provide instructions and NRR labels with every CAEv2 pair, the jury started from the premise that Appellants knowingly violated the law with every shipment of earplugs to the military. By labeling Appellants as lawbreakers, the

district court prejudiced Appellants' defense globally, not just as to Estes's and Keefer's negligence *per se* claims. *Contra* Resp.Br.47-48.

Plaintiffs took advantage of the Court's erroneous legal ruling early and often, accusing Appellants of violating the regulations in their opening statement, *see* 3/30/21 Tr. 45:24-46:3, 66:20-24, and asking Appellants' witnesses whether they understood the regulations applied to all hearing protectors, including those sold to the military, *see* 4/20/21 Tr. at 236:2-4; 4/27/21 Tr. at 208:3-18. Furthermore, over Appellants' objection, Plaintiffs tied Appellants' failure to comply with the Court's interpretation of the EPA regulations to "unreasonableness." 4/27/21 Tr. at 208:3-18. Appellants' inability to defend the "reasonableness" of their conduct given the Court's instructions undoubtedly influenced the jury's perception of that conduct and tainted their entire deliberation. In short, once plaintiffs and the Court repeatedly told the jury that Appellants were lawbreakers based on the undisputed fact that no NRR labels were provided to the military, Appellants faced a steep uphill battle on every claim.

Plaintiffs fault Appellants for not repeating objections to these statements and questions throughout the trial, Resp.Br.17, 48-49, but the court had already rejected Appellants' statutory argument and ruled that the regulations applied to the CAEv2, so any objections would have been futile and unnecessary. *See* Fed. R. Evid. 103(b) ("Once the court rules definitively on the record—either before or at trial—a party

need not renew an objection or offer of proof to preserve a claim of error for appeal."). Worse still, even indicating a contemporary understanding contrary to the district court's erroneous ruling issued years after the fact resulted in admonishment before the jury. When Aearo's Berger tried to explain that Appellants "didn't believe" complying with the EPA regulations "was necessary," 4/20/21 Tr. at 236:2-4, the court interjected that the jury could not consider that testimony "as an accurate statement of any laws, any EPA regulations, or anything of that sort," *id.* at 244:11-12. This allowed plaintiffs to argue in closing that "[t]he Judge has instructed you" that "Mr. Berger is not right"—that compliance with EPA regulations was "required," "[e]ven in the military." 4/29/21 Tr. at 132-33. These comments only underscored for the jury the impression of Appellants as companies with their own rogue understanding of the law. That inaccurate portrayal prejudiced Appellants on all counts.

## III. Numerous Evidentiary Issues Require A New Trial.

### A. The Vietas Letter and *Qui Tam* Report Are Inadmissible.

Plaintiffs do not dispute that they made liberal use of the July 2019 letter authored by Air Force Colonel Jay Vietas, in particular its false hearsay statement that the CAEv2 "were found to be defective." P-Gen-2586. Plaintiffs feebly suggest that Appellants forfeited any hearsay argument, but even plaintiffs' counsel agreed in a subsequent bellwether trial that "[t]here is no dispute" that "[t]he statement is

22

hearsay." 4/19/22 *Vaughn* Tr. 9:20-24. Additionally, the list of objections to that document that Appellants submitted before trial incorporated a motion in limine that expressly stated a hearsay objection. *See Estes*.Dkt.115-1 at 24 (citing "3M MIL #06" (Dkt.1664 at 4-8)). In any event, the district court plainly understood Appellants to be making a hearsay objection, because it ruled that the "[s]tatement that 'these [earplugs] were found to be defective' is not admissible for its truth; rather, it is admissible only for [the] jury's consideration of [the] military's knowledge of problems with the CAEv2." *Id*.

Plaintiffs repeat the district court's argument that the "were found to be defective" statement was admissible to rebut the many positive test results on the CAEv2 from military laboratories, which left the jury "with the impression that the military liked the plug, … and the plug's performance." 4/1/21 Tr. 3:7-23. But the statement is probative of the military's knowledge of problems with the CAEv2 only if it is *true* that the CAEv2 was found to be defective. The statement plainly was offered for the truth of what it asserts, and any argument to the contrary is disingenuous—plaintiffs offered the document as proof for their repeated argument that the Air Force had found the CAEv2 to be defective, not merely for the irrelevant proposition that one Air Force colonel subjectively believed in 2019 that the CAEv2 had been found to be defective.

Plaintiffs also suggest that the Vietas letter is subject to the public-record hearsay exception, relying on an order the district court issued in a later bellwether trial. But the district court acknowledged in that order that, even if the letter "as a whole" were a public record and thus not hearsay, there was still "the single hearsay statement that '[t]hese earplugs were found to be defective.'" *Blum.*Dkt.99 at 5. No one could argue otherwise, as the public-record exception extends to "matter[s] observed while under a legal duty to report," and the letter does not claim that any government official observed that the CAEv2 was defective. Fed. R. Evid. 803(8).

Plaintiffs also used the summary of the *qui tam* report to suggest the military had conducted an investigation and concluded Appellants concealed known defects in the CAEv2. But the investigator's summary simply related the hearsay statements of the interviewees. P-Gen-10 at 6. That hearsay within hearsay is inadmissible. Plaintiffs assert that the investigator "analyzed and weighed" other materials in her investigation, Resp.Br.52, but the investigator agreed in a deposition that she was "just summarizing what other people told [her]" when she wrote the summary, and also testified that she had not made any credibility or reliability determinations. Coleman Dep. 236:11-17. Placing hearsay statements into a government report, without any additional analysis or fact-finding, does not transform them into admissible evidence. *See United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009) ("Hearsay within hearsay subject to an exception is not admissible.").

24

The Vietas letter and *qui tam* report prejudiced Appellants' defense to each of plaintiffs' counts. Plaintiffs do not dispute that they repeatedly used the two documents to argue that the military had already done the jury's job for it and concluded that: (1) the CAEv2 was defective; and (2) Appellants had concealed those defects from the military. *See* 3/30/21 Tr. at 48:17-19 ("[T]he Air Force has issued a letter that you'll get to see today that shows … they need to pull it off their shelves, and that the plug is defective."); *id*. at 84:19-21 (arguing that the *qui tam* report "made a factual conclusion that the military did not know, and that [Appellants] did not share; that the plug did not work"). Those two conclusions would produce a plaintiff verdict on every count. Appellants are entitled to a new trial in which plaintiffs have to prove defect and concealment themselves, rather than relying on false and misleading hearsay statements in the Vietas letter and *qui tam* report.

## B. Evidence About Alleged Manufacturing Issues in Mexico Is Inadmissible.

Plaintiffs expend little effort defending the district court's decision to admit hours of testimony about the quality-control testing performed on the CAEv2 *in Mexico*, because no defense is possible. The evidence was plainly irrelevant because no plaintiff alleged he was injured by a badly manufactured earplug. Plaintiffs repeat the district court's assertion that the evidence was relevant to the operation of the Indianapolis lab, but that is erroneous as a matter of logic and geography. The

quality-control *manufacturing* testing in *Mexico* has nothing to do with the REAT *design* testing in *Indianapolis*.

The admission of the manufacturing evidence was extremely prejudicial on every claim. Hours of testimony from several witnesses regarding alleged quality-control issues focused the jury on manufacturing and testing issues in Mexico, which had no proper role in the trial and served only to prejudice the jury against Appellants.

## C. The District Court's Instruction Regarding Other Lawsuits Was Improper.

Plaintiffs offer no persuasive defense of the district court's highly improper decision to inform the jury of an irrelevant and prejudicial fact not in evidence—that there were a "large number" of soldiers suing Appellants for injuries allegedly caused by the CAEv2. 4/28/21 Tr. at 110:21. Plaintiffs defend this as a proper "curative instruction," but there was nothing to cure and no basis for introducing facts not in evidence as a cure.

The "curative instruction" was prompted by the deposition testimony of Lieutenant Colonel Leanne Battler, who testified she had "fit thousands of soldiers with [the] Combat Arms" and "[n]ot one" of them "complain[ed] that the Combat Arms did not adequately protect their hearing." 4/22/21 Tr. at 172:23-173:2. Plaintiffs assert that "[a]fter provisionally winning a motion in limine to exclude evidence of thousands of similar lawsuits, 3M nonetheless boasted that thousands of

soldiers used the CAEv2 without incident." Resp.Br.17-18. Plaintiffs omit that, one day *after* that motion in limine ruling, the district court overruled plaintiffs' objections to the specific lines of Battler testimony relating to the "thousands of soldiers" who did not "complain." *Keefer.*Dkt.109 at 31. Yet *after* her testimony was played, the court reversed itself, concluding that "it [wa]s only fair for the plaintiffs to be able to counter … with the fact that thousands of soldiers have had a problem with the plug." 4/22/21 Tr. at 300:15-20.

The district court's ruling that Battler's testimony opened the door to evidence of other lawsuits was mistaken. Battler's testimony, which the court itself found admissible, could not have opened the door to inadmissible evidence like other plaintiffs' hearsay complaints. *See United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992) ("To be admissible under the doctrine of curative admissibility, the evidence that allegedly opened the door must in fact have been inadmissible."). The court's instruction was also improper because the number of lawsuits in the litigation was not in evidence at all. Plaintiffs tried to use leading questions to get one of Appellants' witnesses to provide that information, but he declined, testifying he did not "know what that number is," and could only speculate that he "would not be surprised that it's a large number" in light of advertisements. 4/28/21 Tr. at 108:1-3, 109:17. The district court then stepped in and supplied the information itself. There was no reason for the court to inform the jury of this irrelevant and prejudicial

fact, and the result was to inflame the jury against Appellants and further distract them from the paucity of evidence supporting liability against Appellants in this deeply flawed trial.

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment of the district court, or at a minimum vacate the judgment and remand for a new trial.

Respectfully submitted,

/s/Paul D. Clement

| | |
|---|---|
| GEORGE W. HICKS, JR. | PAUL D. CLEMENT |
| KASDIN M. MITCHELL |   *Counsel of Record* |
| KIRKLAND & ELLIS LLP | CLEMENT & MURPHY, PLLC |
| 1301 Pennsylvania Avenue, NW | 706 Duke Street |
| Washington, DC 20004 | Alexandria, VA 22314 |
| (202) 389-5000 | (202) 742-8900 |
| | paul.clement@clementmurphy.com |

COLE CARTER
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

*Counsel for Defendants-Appellants*

October 20, 2022

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,442 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman type.

October 20, 2022

s/Paul D. Clement
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Paul D. Clement
Paul D. Clement